UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
SOLWAZI OLUSOLA,                                    REPORT AND
                              Plaintiff,            RECOMMENDATION
          - against -
DON COQUI HOLDING COMPANY, LLC,                     19-CV-6909 (MKB) (JO)
                              Defendant.
-----------------------------------------------------------X

James Orenstein, Magistrate Judge:

Plaintiff Solwazi Olusola ("Olusola"), has accused defendant Don Coqui Holding Company, LLC ("Don Coqui") of copyright infringement for publishing a photograph which the plaintiff holds the copyright on its Instagram page. *See* Docket Entry ("DE") 1 (Complaint). Don Coqui has never responded, and Olusola now seeks a default judgment. *See* DE 9. Upon a referral from the Honorable Margo K. Brodie, United States District Judge, I now make this report and, for the reasons set forth below, respectfully recommend that the court enter a default judgment against Don Coqui in the total amount of $875, consisting of $175 in actual damages, no additional statutory damages, $300 in attorney's fees, and $400 in costs.

I.    Background

Olusola, a professional photographer, took a photograph of Big Daddy Kane ("the photograph") and on August 3, 2018, published it to his Instagram page with a watermark attributing the photograph to Olusola. Don Coqui later copied the photograph and published it, without Olusola's watermark omitted and without a license or Olusola's consent, in a promotional video on its Instagram page. *See* Complaint ¶¶ 1-2, 5-10, 12-13, 15, 22-23 & Exs. A-C.

Olusola filed the Complaint on December 10, 2019, asserting one count of copyright infringement and one count of intentional removal of copyright management information ("CMI"). *See* Complaint ¶¶ 1, 14-28; 17 U.S.C. § 101, *et seq.* (the Copyright Act); 17 U.S.C. § 1201, *et seq.* (the Digital Millennium Copyright Act, or "DMCA"); 17 U.S.C. § 1202(b). Olusola effectively served

process on Don Coqui on December 13, 2019. *See* DE 6. Don Coqui never responded, and the

Clerk entered its default on January 29, 2020. *See* DE 7; DE 8. Olusola filed the instant motion on

April 3, 2020, along with a declaration from his counsel Richard Liebowitz ("Liebowitz"), Olusola's

statement of damages, and a proposed order. *See* DE 9 (notice of motion); DE 10 ("Liebowitz

Decl."); DE 11 ("Olusola Stmt."); DE 12 (proposed order). The court referred the motion to me by

order dated April 6, 2020. That same day, I scheduled a hearing for June 17, 2020, and afforded both

parties an opportunity to file supplemental briefings. Neither party filed any supplemental briefings

prior to the hearing.

At the hearing on June 17, 2020, I discussed with Olusola's counsel several concerns about

the instant motion, including the absence of a memorandum of law justifying the relief requested

and the absence of a certification that all motion papers were served on Don Coqui as required by

local rules. I also noted that the motion papers included no evidence of actual damages. Rather than

denying the motion on these defects however, I afforded Olusola one final opportunity to

supplement his motion by July 24, 2020. *See* DE 16 (minute entry); DE 20 (transcript) ("Tr."); Loc.

Civ. R. 7.1(a)(2); Loc. Civ. R. 55.2(c).[1] On July 6, 2020, Olusola submitted a memorandum of law,

Olusola's affidavit concerning actual damages, and a certificate of service. *See* DE 17 ("Memo."); DE

18 ("Olusola Decl."); DE 19 (certificate of service).

---

[1] Liebowitz's failure to comply with the applicable rule by submitting a memorandum of law is not an isolated violation. *See*, *e.g.*, *Plastik v. Westbury Music Fair, Inc.*, 19-CV-2820, DE 15 at 4 n.1 (E.D.N.Y. Sept. 30, 2020) (report and recommendation); *Dermansky v. Tel. Media, LLC*, 2020 WL 1233943, at *8 n.7 (E.D.N.Y. Mar. 13, 2020); *Pasatieri v. Starline Productions, Inc.*, 2020 WL 207352, at *4 (E.D.N.Y. Jan. 14, 2020).

## II. Discussion

### A. Default

When a defendant defaults, the court must accept as true all well-pleaded allegations in the complaint, except those pertaining to the amount of damages. *See* Fed. R. Civ. P. 8(b)(6); *Finkel v. Romanowicz*, 577 F.3d 79, 81 n.1 (2d Cir. 2009) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). The fact that a complaint stands unanswered does not suffice to establish liability on its claims; a default does not establish conclusory allegations, nor does it excuse any defects in the plaintiff's pleading. With respect to liability, a defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action. *See, e.g., id* at 84; *Greyhound Exhibitgroup*, 973 F.2d at 159. Having reviewed the Complaint in this case, I find that it successfully states the claims for relief alleged under Counts I and II as follows.

### B. Liability

#### 1. Copyright Infringement

To prevail on his first count of copyright infringement, Olusola must demonstrate that he owns a valid copyright and that copied elements of the work were original. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Laureyssens v. Idea Group, Inc.*, 964 F.2d 131, 139 (2d Cir. 1992). "The existence of a valid copyright can be established by the introduction into evidence of a Copyright Office certificate of registration." *Korzeniewski v. Sapa Pho Vietnamese Rest. Inc.*, 2019 WL 312149, at *5 (E.D.N.Y. Jan. 3, 2019) (report and recommendation) (internal citations omitted) (quoting *Durham Indus. Inc. v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir. 1980)), *adopted*, 2019 WL 291145 (E.D.N.Y. Jan. 23, 2019); 17 U.S.C. § 410(c) ("In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute *prima*

*facie* evidence of the validity of the copyright and of the facts stated in the certificate."). Moreover, a court may take judicial notice of copyright registrations published in the United States' Copyright Office's registry. *See Papazian v. Sony Music Entertainment*, 2017 WL 4339662, at *6 n.6 (S.D.N.Y. Sept. 28, 2017) (citing *Island Software and Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005)).

Olusola's Complaint provides the pertinent copyright registration number for the photograph, VA 2-180-283, which suffices to establish his ownership of a valid copyright to the photograph. *See* Complaint ¶ 11. According to public registration records, the effective registration date for the photograph was October 25, 2019. Although that post-dates the alleged infringement on September 11, 2019, it is within five years of the date of the photograph's first publication on August 3, 2018. *See* 17 U.S.C. § 410(c); *Millennium TGA, Inc. v. Leon*, 2013 WL 5719079, at *6 (E.D.N.Y. Sept. 24, 2013) (report and recommendation), *adopted* CV 12-1360 (MKB) (CLP), DE 32; (E.D.N.Y. Oct. 18, 2013) *see also* Complaint, Ex. C; Public Catalog, *United States Copyright Office*, http:// cocatalog.loc.gov (last visited October 8, 2020). Olusola further alleges that he never authorized or licensed Don Coqui to use or publish the photograph. *See* Complaint ¶ 15. Don Coqui's default admits these allegations, and they suffice to establish its liability for copyright infringement. *See Mango v. Northside Media Grp. LLC*, 2019 WL 4262018, at *2 (E.D.N.Y. Aug. 6, 2019) (report and recommendation), *adopted*, 2019 WL 4261743 (E.D.N.Y. Sept. 9, 2019); *Downs v. Yeshiva World News*, 2019 WL 1261406, at *2 (report and recommendation), *adopted*, 18-CV-0250 (LDH) (JO) (E.D.N.Y. Mar. 12, 2019).

    2.    <u>Removal of CMI</u>

To prevail on his second count of intentional removal of CMI under section 1202(b) of the DMCA, Olusola must demonstrate

> (1) the existence of CMI in connection with a copyrighted work; and (2) that [Don Coqui] distributed works or copies of works; (3) while knowing that CMI has been

> removed or altered without authority of the copyright owner or the law; and (4) while knowing, or having reasonable grounds to know that such distribution will induce, enable, facilitate, or conceal an infringement.

*Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 171 (2d Cir. 2020) (cleaned up). Courts in this circuit have held that a watermark is considered CMI that warrants protection under section 1202(b). *See Michael Grecco Prods., Inc. v. Alamy, Inc.*, 372 F. Supp. 3d 131, 138 (E.D.N.Y. 2019) (citing *Myeress v. Elite Travel Group, U.S.A.*, 2018 WL 5961424, at *2 (S.D.N.Y. Nov. 14, 2018)); *see also* 17 U.S.C. § 1202(c)(1)-(3), (7) (defining CMI as any title identifying the work, the name of the author or copyright owner of the work, and identifying numbers or symbols referring to such information).

Olusola's Complaint sufficiently alleges that Don Coqui copied the photograph and then removed CMI by cropping out Olusola's watermark before Don Coqui published it to a video posted on its Instagram page. *See* Complaint ¶¶ 12, 22-23, & Exs. A-C. The Complaint further alleges that Don Coqui knowingly removed this CMI and that such falsification, removal, and alteration was done "intentionally, knowingly and with the intent to induce, enable facilitate, or conceal their infringement." *See id.* ¶¶ 25-26. Don Coqui's default admits these allegations, and they suffice to establish its liability under Count II. *See Sheldon v. Plot Commerce*, 2016 WL 5107072, at *13 (report and recommendation), *adopted*, 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016).

C.    Relief

1.    Actual Damages for Copyright Infringement

Don Coqui's default does not relieve Olusola of his burden to prove damages to a "reasonable certainty[.]" *Credit Lyonnais Securities (USA), Inc. v. Alcantara,* 183 F.3d 151, 155 (2d Cir. 1999) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir. 1997)). The Copyright Act provides that a copyright owner may choose to recover either "actual damages and profits [or] an award of statutory damages for all infringements involved in the action[.]" 17 U.S.C. § 504(c)(1); *see also N.A.S. Import Corp. v. Chenson Enter., Inc.*, 968 F.2d 250, 252

(2d Cir. 1992). Statutory damages, however, are not available if the copyright owner does not timely register his copyrights. *See On Davis v. The Gap, Inc.*, 246 F.3d 152, 156, 171 (2d Cir. 2001). A copyright holder may not elect statutory damages or receive attorney's fees if "any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work." 17 U.S.C. § 412. When calculating actual damages, "the primary measure of recovery is the extent to which the [fair] market value of the copyrighted work at the time of the infringement has been injured or destroyed by the infringement." *Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1118 (2d Cir. 1986). Thus, "the fair market value to be determined is not the highest use for which [a] plaintiff might license but the use the infringer [actually] made." *On Davis*, 246 F.3d at 166 & n.5 (stating also that an award of actual damages "may not be based on 'undue speculation.'") (citing *Absehouse v. Ultragraphics, Inc.*, 754 F.2d 467, 470 (2d Cir. 1985)). Additionally, when a copyright owner seeks recovery of both actual damages suffered by him as a result of the infringement and any profits of the infringer that are attributable to the infringement, the latter must be supported by evidence that has not already been taken into account when computing actual damages. *See* 17 U.S.C. § 504.

Olusola is not entitled to an award of statutory damages because public record confirms that he did not register the photograph until October 25, 2019 – after the September 11, 2019, infringement date and more than three months after the photograph's first publication on August 3, 2018. *See* 17 U.S.C. § 412; *see also* Public Catalog, *United States Copyright Office*, http://cocatalog.loc.gov (last visited October 8, 2020); Complaint Ex. C. Accordingly, Olusola seeks an award of $3,000 in actual damages consisting of $1,500 in lost licensing fees and $1,500 in undue profits. *See* Olusola Stmt. ¶¶ 5-6; Olusola Decl. ¶¶ 6-7. As explained below, I recommend a lower award.

Olusola has not established any actual damages on the basis of licensing fees he has ever charged for either the image at issue here or any other photograph he has created. Instead, he asserts that he could have charged Don Coqui up to $1,500 to publish his photograph in a promotional video on its Instagram page because another entity charges a greater amount to license a different photographer's image of Big Daddy Kane for different purposes. *See* Olusola Decl. ¶ 7. Specifically, Olusola relies exclusively on a $1,650 price estimate from Getty Images, Inc. ("Getty") for a three-year license to publish a photograph of Big Daddy Kane taken on Aug. 12, 1988 (the "1988 photograph") in digital advertisements. *See id.* Ex. A. There are several flaws with this reasoning. The 1988 photograph is significantly older than the one at issue, and Olusola provides no basis for comparing the relative value of images of Big Daddy Kane from such different points in his career. A photographer other than Olusola created the 1988 photograph, and Olusola provides no information concerning the relative rates each photographer commands. The fee Olusola cites is for a three-year license to publish the 1988 photograph in digital advertisement, while the infringement about which Olusola complains was a one-time publication in a promotional that no longer appears on Don Coqui's Instagram page. See https://www.instagram.com/p/B2SBrlKgZjD/ (cited in Complaint ¶ 12; last visited October 7, 2020). Olusola makes no effort to explain why the fee he cites is in any way relevant, despite these differences, simply because his photograph and the 1988 photograph share the same subject.

The license fees for other uses of the same 1988 photograph on the Getty web site are as low as $175. Without more information, I cannot conclude that Olusola has reasonably established actual damages beyond the $175 that represents the lowest license fee for the 1988 photograph. [2] *See*

---

[2] Indeed, in the absence of any reason to believe that the 1988 photograph is in any way a useful comparator, and without any evidence of the licensing fees that Olusola himself has ever secured for any photograph, the court could easily find that Olusola has failed to establish *any* actual damages to

*Terry v. Masterpiece Advert. Design*, 2018 WL 3104091, at *4 (S.D.N.Y. June 21, 2018) (rejecting the specific parameters that the plaintiff used to price a license from Getty at $9,565, and adjusting the parameters to reflect a use more consistent with the defendant's alleged infringement, which resulted in pricing the license closer to $1,560).

Olusola also estimates that he should be awarded an additional $1,500 for Don Coqui's ill-gotten gains but has not provided any support for this request or explained how that would not be duplicative of his similar estimate of lost fees. *See* Olusola Stmt. ¶¶ 5-7; 17 U.S.C. § 504; *Pasatieri*, 2020 WL 207352, at *5 (declining to award anything for the infringer's profits absent sufficient evidence); *see also Romanowicz v. Alister & Paine, Inc.*, 2018 WL 4762980, at *6 (S.D.N.Y. Aug. 3, 2018) (report and recommendation) (same), *adopted*, 2018 WL 4759768 (S.D.N.Y. Oct. 1, 2018; *On Davis*, 246 F.3d at 159; *Eva's Photography, Inc. v. Alisa, LLC*, 2020 WL 2904848, at *2 (S.D.N.Y. June 3, 2020) (denying an award of ill-gotten gains where there is a complete lack of proof from which the court can make any sort of reasonable calculation or award the plaintiff anything more than what it already calculated in actual damages); *see also Pasatieri*, 2020 WL 207352, at *5 (presuming that where the plaintiff's estimated actual damages and estimated ill-gotten gains are the same, the plaintiff is likely basing his estimate for the latter on the former). Accordingly, I respectfully recommend that the court award Olusola $175 in actual damages and no additional amount for Don Coqui's alleged ill-gotten gains.

### 2.    Statutory Damages for Removal of CMI

Olusola also seeks statutory damages under the DMCA for his claim of intentional removal of CMI. Statutory damages awarded under the DMCA may range between $2,500 and $25,000 for each violation. *See* 17 U.S.C. § 1203(c)(3)(B). As explained below, I respectfully recommend against

---

a reasonable degree of certainty. I assume the license has at least nominal value, and therefore base my recommendation on the lowest fee for the 1988 photograph to avoid needless further litigation.

such an award because it would be impermissibly duplicative of the award of Olusola's actual damages. *See* 17 U.S.C. § 1203(b)(3) ("In an action brought under [section 1201 or 1202], the court ... may award damages under subsection c", which includes actual or statutory damages).

The Second Circuit has made clear that "[a] plaintiff seeking compensation for the same injury under different legal theories is of course only entitled to one recovery." *Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 497 (2d Cir. 1995); *see, e.g.*, *Tu v. TAD Sys. Tech. Inc.*, 2009 WL 2905780, at *5 (E.D.N.Y. Sept. 10, 2009) (denying duplicative statutory damages under the Copyright Act, DMCA, and the Lanham Act); *Microsoft Corp. v. Computer Care Ctr., Inc.*, 2008 WL 9359718, at *7 (E.D.N.Y. Apr. 8, 2008) (report and recommendation), *adopted*, 2008 WL 4179653, at * 8 (E.D.N.Y. Sept. 10, 2008) (finding no legal support for statutory damages under both the Copyright Act and the Lanham Act). Recently, however, some courts in this circuit have awarded damages under multiple intellectual property statutes to the extent that each statute protects different interests. *See, e.g.*, *Sheldon*, 2016 WL 5107072, at *10; *Agence France Presse v. Morel*, 2014 WL 3963124, at *10 (S.D.N.Y. Aug. 13, 2014) (noting that DMCA damages are not always duplicative of an award for copyright infringement "because the Copyright Act and the DMCA protect different interests."). The courts recognize, however, that such cumulative awards are not always justified. *See Seelie v. Original Media Grp. LLC*, 2020 WL 136659, at *5 (E.D.N.Y. Jan. 13, 2020). I conclude that the circumstances of this case make an award of statutory damages under the DMCA inappropriate.

Olusola provides no support for his request for $10,000 in statutory damages aside from his counsel's declaration citing some court orders granting similar relief in other cases. *See* Liebowitz Decl. ¶ 22 & Ex. A. Olusola does not explain, however, what makes those cases comparable to this one. *See Jerstad v. New York Vintners LLC*, 2019 WL 6769431, at *3 (S.D.N.Y. Dec. 12, 2019) (report and recommendation) (noting that attaching orders from other courts that have approved $10,000 in

statutory damages without explanation provides no support for why similar statutory damages should be awarded in the instant case), *adopted*, 2020 WL 58237 (S.D.N.Y. Jan. 6, 2020).[3]

More importantly, Olusola does not identify any harm to be compensated by an award of statutory damages under the DMCA that is not also the basis for an award of actual damages for copyright infringement. Both the DMCA and the Copyright Act afford copyright holders the opportunity to seek either statutory or actual damages to compensate for the unauthorized use of copyright material, such as lost licensing fees. *See Reilly v. Commerce*, 2016 WL 6837895, at *8 (S.D.N.Y. Oct. 31, 2016) (report and recommendation), *adopted*, 15-CV-5118 (PAE) (BCM), DE 21 (S.D.N.Y. Nov. 21, 2016). It is of course possible that Don Coqui's removal of Olusola's watermark caused Olusola some form of harm other than that arising from the infringement, but Olusola has not even attempted to identify, let alone prove, any such harm. I respectfully recommend that the court not simply assume that such additional harms exist. *See id.* (recommending against DMCA statutory damages award for the same reason); *see also Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 720 (2d Cir. 1992) (holding that a party "may not obtain a double recovery where the damages for copyright infringement and trade secret misappropriation are coextensive"). I therefore respectfully recommend that the court deny Olusola's request for an award of statutory damages under the DMCA.[4]

---

[3] Olusola's failure in this regard – or more precisely, the failure of Olusola's counsel, Liebowitz – is consistent with a pattern in other cases in which Liebowitz adduces little or no evidence to support his clients' damages requests. *See, e.g.*, *Seelie*, 2020 WL 136659, at *1-5 (collecting cases and noting that Liebowitz "does not appear to be listening to the judges of the districts in which he practices").

[4] If the court rejects the foregoing analysis, I respectfully recommend that it award Olusola the minimum statutory damages award under the DMCA of $2,500. Olusola has provided no basis for anything more.

3.      Attorney's Fees

Olusola seeks reimbursement of $2,250 in attorney's fees to compensate his counsel for six hours of work at an hourly rate of $425. *See* Liebowitz Decl. ¶ 23-25. Olusola is entitled to an award of attorney's fees and costs under the DMCA, which permits the court, "in its discretion" to award reasonable attorney's fees and costs to a prevailing party in a section 1202 claim. *See* 17 U.S.C. 1203(b)(4)-(5). As discussed above, however, Olusola is not entitled to attorney's fees under the Copyright Act because of his untimely registration. *See* 17 U.S.C. § 412.

Courts in this circuit assess fee applications using the "lodestar method," which multiplies the reasonable hourly rate by the reasonable number of hours expended. *See Millea v. Metro-North R.R.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)). District courts have broad discretion, using "'their experience with the case, as well as their experience with the practice of law, to assess the reasonableness'" of each component of a fee award. *Fox Indus., Inc. v. Gurovich*, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)). For the following reasons, I recommend an award of attorney's fees substantially lower than the amount requested.

a.      Hourly Rate

Olusola's seeks compensation for his counsel, Liebowitz, at an hourly rate of $425. *See* Liebowitz Decl. ¶¶ 23-25. This rate is too high. A reasonable hourly rate is the rate a "reasonable, paying client" would be willing to pay. *See Manzo v. Sovereign Motor Cars, Ltd.*, 2010 WL 1930237, at *7 (E.D.N.Y. May 11, 2010) (stating that a presumptively reasonable fee "boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively.") (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quotation marks omitted)). Courts in this district typically award $300-

$400 for partners, $200-$325 for senior associates, $100-$150 for junior associates, and $70-$100 for non-attorney professionals. *See Alvarez v. Sterling Portfolio Investment, LP*, 2017 WL 8790990, at * 8 (E.D.N.Y. Dec. 13, 2017) (collecting cases).

Liebowitz's claimed hourly rate of $425 is higher than the prevailing rate awarded by courts in this district to attorneys with his experience. *See Dermansky*, 2020 WL 1233943, at *7 (noting that despite Liebowitz's title as "partner" he has only been practicing a relatively short time and awarding him $350 per hour consistent with the prevailing rates for a junior-partner or senior associate); *Downs v. Yeshiva World News*, 2019 WL 1261406, at *3 (awarding Liebowitz an hourly rate of $250). More importantly, as explained below, Liebowitz's rate exceeds what a "reasonable, paying client" would be willing to pay for the representation he provides.

Liebowitz was admitted to practice in 2015. Since then, he has filed over 1000 copyright infringement lawsuits in the Eastern and Southern Districts of New York. As remarkable as that pace is, even more remarkable is the pace at which those courts have sanctioned him. *See Usherson v. Bandshell Artist Mgmt.*, 2020 WL 3483661, at *1 (S.D.N.Y. June 26, 2020) (describing Liebowitz as "one of the most frequently sanctioned lawyers, if not the most frequently sanctioned lawyer, in the [Southern] District."); *Rice v. NBCUniversal Media, LLC*, 2019 WL 3000808, at *1 (S.D.N.Y. July 10, 2019) (citing a "growing body of law" devoted to sanctions against Liebowitz alone). Liebowitz consistently provides little if any legal analysis to support his positions and little if any factual support for his assertions; moreover, he routinely flouts local rules and court orders. *See, e.g.*, *Dermansky*, 2020 WL 1233943, at *8 n.7 (taking note of SDNY's repeated concerns regarding Mr. Liebowitz's practice); *Pasatieri*, 2020 WL 207352, at *4 (same).[5] This case is no exception. I conclude

---

[5] In *Usherson*, the court provided a detailed account of instances in which Liebowitz violated orders and made false statements. *See* 2020 WL 3483661, at *11-18. In addition to referring Liebowitz to the Grievance Committee of the Southern District of New York, the court entered an order that

that even a client willing to suffer such representation would be unwilling to pay for it at an hourly rate greater than that charged by the least experienced and qualified attorney admitted to practice in this district. I therefore respectfully recommend that the court award fees on the basis of a $100 hourly rate.

b.    Compensable Hours

Olusola asks the court to order Westbury to reimburse him for the cost of six hours of work by his counsel. *See* Liebowitz Decl. ¶¶ 23-25; Memo. at 8. Liebowitz' billing records reflect that amount of time billed but reveal a number of inefficiencies and redundancies that warrant a reduction. *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (excluding hours not "reasonably expended."). First, Liebowitz appears to have billed at half hour increments, which is inexcusable. *See Claudio v. Mattituck-Cutchogue Union Free Sch. Dist.*, 2014 WL 1514235, at *15 (E.D.N.Y. Apr. 16, 2014) (reducing counsel's hours after billing records indicated counsel's standard practice to bill in increments of one-half hour, even for tasks that should have taken far less time to perform). Second, the 2.5 hours Liebowitz spent preparing, drafting, and filing the Complaint, and the 3 hours Liebowitz spent drafting the request for entry of default and drafting the default judgment, including his attorney declaration, are unreasonable given the frequency that Liebowitz files these nearly identical documents in other copyright cases and given the fact that the instant motion initially

---

required Liebowitz to file the *Usherson* opinion on the docket of this case. *See id.* at *22; DE 21 (Liebowitz's notice in this case as required by the order in *Usherson*). The referral to the Grievance Committee in *Usherson* was not a unique experience for Liebowitz. Another judge in the Southern District of New York referred Liebowitz to that court's Grievance Committee after finding that he had made a false statement about his grandfather's death to excuse his failure to attend a court conference. *See Berger v. Imagina Consulting, Inc.*, No. 18-CV-8956 (CS), DE 62 (S.D.N.Y. Nov. 13, 2019); *Berger v. Imagina Consulting, Inc.*, 2019 WL 6695047 (S.D.N.Y. Nov. 1, 2019). Moreover, although Liebowitz discharged his duty to file the *Usherson* opinion in this case, he failed to do so until reminded of his obligation in two other cases before me. *See Plastik*, 19-CV-2820 (RJD) (JO), DE 15 at 7 n.3; *Stokes v. True Colors Bar, Inc.*, 19-CV-2696 (ENV) (JO), DE 20 (minute entry) (E.D.N.Y. Sept. 29, 2020).

contained no memorandum of law or legal analysis. *See, e.g., Whitehead v. Mix Unit, LLC*, 2019 WL 384446, at *6 (S.D.N.Y. Jan. 31, 2019) (report and recommendation) (citing *Romanowicz*, 2018 WL 4762980, at *6 (finding that preparing complaint, motion for default judgment, and materials for damages inquest in similar copyright case should have taken Liebowitz only one and a half hours each)), *adopted*, 2019 WL 1746007 (S.D.N.Y. Apr. 18, 2019); *see also Myeress*, 2018 WL 5961424, at *5 (reducing Liebowitz' reasonable number of hours billed to 7 and noting that Liebowitz routinely represents photographers in this district and uses template documents to file complaints and that his motion to default contains limited analysis and consists largely of lengthy string-cites).

I respectfully recommend that the court order Don Coqui to reimburse Olusola for three hours of Liebowitz's time: one hour to review the case file in preparation for filing and conducting due diligence regarding the relevant copyright registration, one hour to prepare and file the Complaint, and one hour to seek the entry of default and file the cookie-cutter (and deficient) motion papers now before the court on the motion for default judgment. Based on the hourly rate of $100 that I recommend above, I respectfully recommend that the court award Olusola attorneys' fees in the total amount of $300.

### 4.    Costs

Olusola, seeks the reimbursement for $440 in costs, including the $400 filing fee and $40 for service of process. *See* Liebowitz Decl. ¶ 25. The docket conclusively establishes that Olusola paid the $400 filing fee. *See* DE 1. However, Olusola has provided no documentation for his claim that he paid a personal service fee of $40. I therefore respectfully recommend an award of $400 in costs. *See Mango v. Northside Media Grp. LLC*, 2019 WL 4262018, at *3.

### III.    Recommendation

For the reasons set forth above, I respectfully recommend that the court enter a default judgment against the defendant on Count I and II, and award the plaintiff a total of $875, consisting

of $175 in actual damages, no additional statutory damages, $300 in attorney's fees, and $400 in costs.

IV.    Objections

I respectfully direct the plaintiff to serve a copy of this Report and Recommendation on the defendant by certified mail, and to file proof of service no later than October 12, 2020. Any objections to this Report and Recommendation must be filed no later than October 22, 2020. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

SO ORDERED.

Dated:  Brooklyn, New York
        October 8, 2020

                                    _____/s/_____
                                    James Orenstein
                                    U.S. Magistrate Judge